**Maurice SHANNON et al.**

**v.**

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT et al.**

**Civ. A. No. 69–197.**

United States District Court,
E. D. Pennsylvania.

Dec. 30, 1974.

**6**

Edwin D. Wolf, Public Interest Law Center of Philadelphia, Philadelphia, Pa., for plaintiffs; Robert B. Wolf, Michael Churchill, Philadelphia, Pa., of counsel.

Robert E. J. Curran, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM

JOSEPH S. LORD, III, Chief Judge.

The facts underlying this dispute, now nearly six years old, are reported at 305 F.Supp. 205 (1969). Briefly, however, we reiterate that plaintiffs, black and white residents, businessmen, and representatives of private civic organizations in the East Poplar Urban Renewal Area of Philadelphia, alleged that defendants improperly approved construction of an apartment project, Fairmount Manor, in that area. After several days of testimony, we granted defendants' motion to dismiss. 305 F.Supp. 205 (E.D.Pa. 1969). The Court of Appeals, however, reversed our dismissal, 436 F.2d 809 (C.A. 3, 1970), and remanded the cause to us for

> " * * * the entry of an injunctive order prohibiting further steps in the finalization of mortgage insurance or other federal financial assistance to the project until such time as HUD makes a determination in substantive and procedural conformance with this opinion * * *. The HUD determination shall be reviewable by the district court which at that time may make an appropriate final order." *Id.,* at 822–823.

Subsequently, HUD determined that had it been in conformity with the Court of Appeals mandate to utilize "some institutionalized method whereby, in considering site selection or type selection,

it [would have had] before it the relevant racial and socio-economic information necessary for compliance with its duties under the 1964 and 1968 Civil Rights Acts," 436 F.2d at 821, it would not have approved the application to insure the mortgage for Fairmount Manor. Thereafter, we ordered defendants to retain experts:

> "to determine how to remedy the effect of the illegal approval of the project. Remedies to be considered shall include but not be limited to demolition and reconstruction; renovation and modification of Fairmount Manor; additional construction in the area; construction in adjacent areas; and the revision of the administration of federal site selection regulations."

On September 23, 1974, we ordered that a hearing be held on December 2, 1974 to determine various legal issues relating to the relief proposal by the experts (Venturi and Rauch) retained by defendants. We ordered that the following issues be argued:

1. Should this Court order equitable relief?

2. If so, what equitable relief is appropriate in view of the harm caused by the illegal acts of the defendants?

3. Are HUD's objections to relief that might be otherwise appropriate, valid? These are

   (a) The relief is not related to Fairmount Manor;

   (b) Funds to pay for the relief have been impounded;

   (c) The Site Selection Criteria prevent the relief sought; and

   (d) Any others.

4. Are there any other impediments —practical, legal, or equitable, to the relief?

We concluded our Order by stating that it "may be amended upon request of either party and upon due notice to the other party, not later than one week prior to the hearing."

On November 21, 1974 we granted plaintiffs' motion to amend their complaint. The complaint was amended only to change the caption and to alter the prayer for relief in conformance with the recommendations of the Venturi and Rauch report. Defendants moved to dismiss the amended complaint or, in the alternative, for summary judgment. At the December 2 hearing, defendants chose to argue only the grounds for dismissal or summary judgment raised in their motion. No arguments were made by defendants with regard to the issues set forth in our order of September 23 nor has any brief been filed addressing those issues. Therefore, defendants have failed to comply with our order and we deem any objections to the entry of equitable relief, other than those raised by defendants' motion to dismiss or for summary judgment, as having been waived. And, for the reasons which follow, we shall deny the motion to dismiss or for summary judgment.

Defendants have rested their motion on three grounds, each without merit. First, they argue that plaintiffs lack standing to bring this action under the amended complaint. However, we clearly stated in our first opinion, 305 F. Supp. 205 (E.D.Pa.1969), that plaintiffs had standing under the original complaint. Furthermore, the Court of Appeals agreed that plaintiffs had alleged sufficient injury in fact to the "very quality of their daily lives" and were "vitally affected by the adequacy of the particular program of community improvement for the preservation of a residential community with decent homes and a suitable living environment which they seek to challenge." 436 F.2d at 818.

Defendants assert, however, that depositions recently taken of seven of the eleven named plaintiffs reveal that these plaintiffs are not actually concerned with the fact that residents of Fairmount Manor are predominantly black. Defendants argue that the injury in fact referred to by the Court of Appeals was the increased concentration of black residents. Thus while plaintiffs may have satisfied the standing requirements by raising the proper allegations in their original complaint, defendants argue that they have lost standing because the facts now show that plaintiffs no longer allege injury in fact.

We cannot accept this argument. Our original determination that plaintiffs had standing to challenge HUD's actions was based not only on the allegations of the complaint but on the testimony as actually adduced at trial. The amended complaint in no way alters the allegations of the original complaint with respect to the injury alleged. Additionally, we do not agree with defendants that the opinion of the Court of Appeals limits the basis of standing to concerns over the racial composition of Fairmount Manor. Rather, the court states that the allegation that the "concentration of *lower income* black residents in a 221(d)(3) rent supplement project in their neighborhood will adversely affect not only their investments in homes and businesses but even the very quality of their lives" (emphasis added) constituted a sufficient claim of injury in fact to support plaintiffs' standing. We cannot say that the racial factor, any more than the economic factor, was the basis of the Court of Appeals' conclusion. Furthermore, the illegality found by the Court of Appeals was HUD's failure to adopt some "institutionalized method" of evaluating the application which took account of the national housing policy to reduce racial concentration. Any plaintiff claiming to have been injured by that failure has standing to challenge HUD's approval, whether or not specifically aggrieved by the increased racial concentration. Therefore, even if defendants are correct in their assertion that the depositions reveal no concern with racial impaction, this fact would be irrelevant to the issue of standing.

Defendants' second basis for dismissal is an assertion that the doctrine of sovereign immunity bars this action. Again, we are asked to overrule ourselves and the Court of Appeals; again

**8**

we will not. The doctrine of sovereign immunity was raised earlier and was held not to be a valid defense to this action. The doctrine is inapplicable when acts of a federal officer are challenged as going beyond his statutory authority. Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). *See also* Gautreaux v. Romney, 448 F.2d 731, 735 (C.A.7, 1971).

Finally, defendants argue that plaintiffs are, in effect, seeking damages in their prayer for relief. Since damages would be appropriate only if there were a statute either granting or implying a civil remedy for private plaintiffs, and since no such statute exists, none of the relief sought is within our power to grant, the argument goes.

We reject defendants' argument, since it relies on a misconception of the nature of the relief sought. The mere fact that funds may have to be expended does not turn relief otherwise equitable in nature into a legal claim for damages. For example, an order that a school district institute a busing program in order to effect desegregation is within the equitable powers of a federal district court. *See* Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). Such an order clearly entails the expenditure of funds. We do not imply that any of the relief sought by plaintiffs will, after a hearing, ultimately be found to be appropriate. We merely reject defendants' argument that such relief is outside our power to grant because it entails the expenditure of funds. To the contrary, the equitable power of a court to remedy a wrong is both broad and flexible. *See* Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944).

Therefore, we shall deny defendants' motion to dismiss or, in the alternative, for summary judgment. Furthermore, because the government has chosen not to press any objections, other than those discussed above, we hold that HUD may not object to the relief on the basis of site selection criteria, the impoundment of funds, or any other basis except that the relief sought is inappropriate to remedy HUD's improper approval of the application to finance Fairmount Manor. A hearing shall be ordered to allow plaintiffs the opportunity to show that the relief requested is appropriate. In anticipation of this hearing, defendants shall prepare a cost estimate of plaintiffs' requests for relief.