Michael A. **HERNANDEZ**, Plaintiff,

v.

**UNITED STATES**, Defendant.

No. 10–662C.

United States Court of Federal Claims.

Nov. 15, 2010.

---

Michael A. Hernandez, Tecumseh, Neb., pro se.

Douglas Thomas Hoffman, Trial Attorney, Civil Division, Commercial Litigation Branch, United States Department of Justice, Washington, D.C., for the defendant. With him were Jeanne E. Davidson, Director, Commercial Litigation Branch, and Tony West, Assistant Attorney General, Civil Division.

## ORDER

HORN, Judge.

### FINDINGS OF FACT

The plaintiff, Michael A. Hernandez, filed a *pro se* complaint in this court on October 1, 2010, together with an application to proceed *in forma pauperis*. Based on the information submitted with the complaint and in *forma pauperis* application, Mr. Hernandez qualifies for *in forma pauperis* status. Subsequently, on October 28, 2010, plaintiff filed a motion for appointment of counsel. How-

ever, because the court dismisses plaintiff's complaint for lack of jurisdiction and failure to state a claim, the court finds plaintiff's motion for appointment of counsel to be moot.

Plaintiff is currently incarcerated at the Tecumseh State Correctional Institution in Tecumseh, Nebraska, after being found guilty of distributing methamphetamine in Nebraska state court. He was sentenced to a period of twenty to thirty years in prison. Plaintiff makes repetitive and varied, albeit difficult to follow, allegations in his complaint, many of which are related to his criminal conviction. In his complaint, plaintiff makes different claims for monetary damages, including for: "suffering incurred from the Defendants [sic] acts or omissions ... the injuries suffered are in excess of at least 50 million dollars each," in another section of the complaint he requests "$50,000,00.00" and in yet another section he seeks 150 million dollars in total.

Despite its more elaborate caption, the court construes plaintiff's claim to be against the United States for purposes of review.[1] All claims in the United States Court of Federal Claims must have "the United States designated as the party defendant. . . ." Rule 10(a), Rules of the United States Court of Federal Claims (RCFC) (2010); *see also* 28 U.S.C. § 1491(a)(1) (2006); *United States v. Sherwood*, 312 U.S. 584, 587–88, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (regarding the jurisdiction of a predecessor court to the United States Court of Federal Claims, the United States Supreme Court stated, "if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court."); *Eskridge Research Corp. v. United States*, 92 Fed.Cl. 88, 95 (2010) ("The United States is the only proper defendant before the Court of Federal Claims.").

Throughout the complaint, plaintiff tries to rely on numerous statutes. For example, plaintiff cites to the following criminal statutes, 18 U.S.C. § 201(c)(2) (2006) (bribery of

a witness); 18 U.S.C. § 241 (2006) (conspiracy against rights); 18 U.S.C. § 371 (2006) (conspiracy to commit offense or to defraud United States); 18 U.S.C. § 1503 (2006) (obstruction of justice); 18 U.S.C. § 1512(b)(2) (2006) (tampering with a witness); 18 U.S.C. § 1621 (2006) (perjury); and 18 U.S.C. § 1622 (2006) (subornation of perjury). Among other claims based on these statutory citations, plaintiff claims that the defendant's use of "Federal Funds to pay for the use of perjured testimony violates the Plaintiff's Federally Protected Rights, a Malicious Prosecution," the "U.S. Dept. of Justice breached the Ft. Laramie Treaty of 1868,[2] Art. I, failing their contractual obligations to arrest Box Butte Co. Dist. Court Officers and W.I.N.G.[3] Officer Ken Hart, for their roles in the commission of Federal Crimes against the Plaintiff," "the United States District Court of Nebraska breached their Special Fiduciary Duties and Contractual Obligations to uphold the law and enforce the Plaintiff's Sioux Indian Treaty Rights of 1868," and that "the 'wrongdoers' in this complaint be arrested and prosecuted in accordance with the 'Bad Men' clause of the Ft. Laramie Treaty of 1868, Art. I."

The gravamen of plaintiff's complaint seems to arise from the allegation that "Plaintiff was forced to go to trial in a Courthouse that sits on stolen unceded Sioux Indian land," and the consequences which arose from his state court trial, including "unlawful trial and conviction." Among the claims raised by Mr. Hernandez regarding his criminal prosecution, it appears he is alleging that a Western Intelligence Narcotics Group officer purchased the testimony of a witness against the plaintiff at his trial in Box Butte County, Nebraska. Plaintiff also alleges that the prosecutor "subornated [sic] perjury" by inducing the same witness to falsely testify against the plaintiff and that the Box Butte County district judge "failed to recuse [sic] due to a conflict of interest, failed to conduct conflict of interest hearings, entered bribed, perjured testimony against the Plaintiff, and

---

1. In addition to the United States, plaintiff lists the "U.S. Dept. of Justice" and the "U.S. District Court of Nebraska" as defendants.

2. Fort Laramie Treaty of 1868, Apr. 29, 1868, 15 Stat. 635 (the Fort Laramie Treaty).

3. Western Intelligence Narcotics Group.

failed to uphold the Plaintiff's Sioux Indian Treaty Rights[4] when the Plaintiff pled Sovereign Immunity."

Mr. Hernandez lists multiple "Demands" for relief throughout his complaint, including that he be immediately released from prison, damages for "Plaintiff's physical and mental suffering incurred between October 21, 2005 and to [sic] the present date," "the loss of consortium [sic] suffered by the Plaintiff's family," and "for declaratory, injunctive, and equitable relief or such other, further, and different relief as this Court deems appropriate." Plaintiff also requests "that Plaintiff be granted Sovereign Immunity," and "that the Box Butte Co. Courthouse be removed from Unceded Sioux Indian land" based on an illegal taking. Plaintiff also alleges that the various claims by the plaintiff "warrants an Official Hearing in the United States Court of Federal Claims."

## DISCUSSION

When determining whether a complaint filed by a *pro se* plaintiff is sufficient to invoke review by a court, *pro se* plaintiffs are entitled to liberal construction of their pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied*, 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977). However, "there is no 'duty [on the part] of the trial court ... to create a claim which [plaintiff] has not spelled out in his [or her] pleading....'" *Scogin v. United States*, 33 Fed.Cl. 285, 293 (1995) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.1975)) (alterations in original); *see also Minehan v. United States*, 75 Fed.Cl. 249, 253 (2007).

"While a *pro se* plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the *pro se* plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States*, 93 Fed.Cl. 163, 165 (2010) (citing *Hughes v. Rowe*, 449 U.S. at 9, 101 S.Ct. 173 and *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed.Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), *reh'g and reh'g en banc denied* (Fed.Cir. 2002)).

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*." *Folden v. United States*, 379 F.3d 1344, 1354 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2004), *cert. denied*, 545 U.S. 1127, 125 S.Ct. 2935, 162 L.Ed.2d 865 (2005); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1346 (Fed.Cir.2008); *Fanning, Phillips, Molnar v. West*, 160 F.3d 717, 720 (Fed. Cir.1998) (quoting *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (Fed.Cir. 1993)); *United States v. Newport News Shipbuilding and Dry Dock Co.*, 933 F.2d 996, 998 n. 1 (Fed.Cir.1991); *Thompson v. United States*, 88 Fed.Cl. 263, 266 (2009); *North Star Alaska Hous. Corp. v. United States*, 76 Fed.Cl. 158, 185, *appeal dismissed*, 226 Fed.Appx. 1004 (Fed.Cir.2007). "In fact, a court has a duty to inquire into its jurisdiction to hear and decide a case." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1342 (Fed.Cir.2001) (citing *Johannsen v. Pay Less Drug Stores N.W., Inc.*, 918 F.2d 160, 161 (Fed.Cir.1990)); *see also Entegris, Inc. v. Pall Corp.*, 490 F.3d 1340, 1343 (Fed.Cir. 2007); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 115 F.3d 962, 963 (Fed.Cir.1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not.").

Pursuant to this court's rules and Rule 8(a) of the Federal Rules of Civil Procedure, a plaintiff need only state in the com-

---

4. Plaintiff alleges he is "a signatory member of the Rosebud Sioux Tribe, Enrollment No.

345U021853."

plaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2); Fed.R.Civ.P. 8(a)(1), (2) (2010). *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555-57, 570, 127 S.Ct. 1955). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)), *reh'g denied* (Fed.Cir. 1997); *see also Edelmann v. United States,* 76 Fed.Cl. 376, 379 (2007). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir. 1998); *see also McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1363 n. 9 (Fed.Cir.2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, *Federal Practice and Procedure* § 1286 (3d ed.2004)); *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). As stated in *Ashcroft v. Iqbal,* "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' [*Bell Atlantic Corp. v. Twombly,*] 550 U.S. at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal,* 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

■ When deciding a case based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974);

*United Pac. Ins. Co. v. United States,* 464 F.3d 1325, 1327-28 (Fed.Cir.2006); *Boise Cascade Corp. v. United States,* 296 F.3d 1339, 1343 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2002), *cert. denied,* 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Pixton v. B & B Plastics, Inc.,* 291 F.3d 1324, 1326 (Fed.Cir.2002); *Commonwealth Edison Co. v. United States,* 271 F.3d 1327, 1338 (Fed.Cir.2001) (quoting *New Valley Corp. v. United States,* 119 F.3d 1576, 1580 (Fed.Cir. 1997)), *cert. denied,* 535 U.S. 1096, 122 S.Ct. 2293, 152 L.Ed.2d 1051 (2002); *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir. 2000).

■ The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on Federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Greenlee County, Ariz. v. United States,* 487 F.3d 871, 875 (Fed. Cir.), *reh'g and reh'g en banc denied* (Fed. Cir. 2007), *cert. denied,* 552 U.S. 1142, 128 S.Ct. 1082, 169 L.Ed.2d 810 (2008); *Palmer v. United States,* 168 F.3d 1310, 1314 (Fed. Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed.Cir.1996).

■ "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim

must be one for money damages against the United States . . . ." *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see also United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Radioshack Corp. v. United States,* 566 F.3d 1358, 1360 (Fed.Cir.2009); *Rick's Mushroom Serv., Inc. v. United States,* 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."). In *Ontario Power Generation, Inc. v. United States,* 369 F.3d 1298 (Fed.Cir. 2004), the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." *Eastport S.S. [Corp. v. United States,* 178 Ct.Cl. 599,] 372 F.2d [1002,] 1007–08 [ (1967) ] ] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket' " (quoting *Clapp v. United States,* 127 Ct.Cl. 505, 117 F.Supp. 576, 580 (1954))). . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." *Eastport S.S. [Corp. v. United States* ], 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." *Id.; see also [United States v.] Testan,* 424 U.S. [392,] 401–02, 96 S.Ct. 948 [47 L.Ed.2d 114] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.' " (quoting *Eastport S.S. [Corp. v. United States*], 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

*Ontario Power Generation, Inc. v. United States,* 369 F.3d at 1301.

■ To prove that a statute or regulation is money mandating, plaintiff must demonstrate that an independent source of substantive law relied upon "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Mitchell,* 463 U.S. at 217, 103 S.Ct. 2961 (quoting *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948 and *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)); *see also Hamlet v. United States,* 63 F.3d 1097, 1107 (Fed.Cir.), *reh'g denied, en banc suggestion declined* (Fed.Cir. 1995), *cert. denied,* 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996). "Additionally, the specific authority granting money relief must be distinct from the Tucker Act itself." *Cottrell v. United States,* 42 Fed.Cl. 144, 152 (1998). "If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act." *Fisher v. United States,* 402 F.3d 1167, 1173 (Fed.Cir. 2005); *see also Doe v. United States,* 74 Fed.Cl. 794, 796 (2006).

As noted above, in his complaint plaintiff cites to numerous, random sources as a basis for his claims in the complaint. Among those, plaintiff repeatedly cites to the Tucker Act, 28 U.S.C. § 1491, but often without explanation and not in the context of a claim which would be proper under the Tucker Act. Likewise, plaintiff cites to the Contract Disputes Act, 41 U.S.C. § 601 et seq. (2006) which he describes as "a statute for money-

mandating, [sic] for damages." Plaintiff adopts a "kitchen sink" approach to asserting his claims, making blanket statements of both fact and law, and including various statutory and case citations, which do not support the plaintiff's position. Despite the length of the complaint and the attached exhibits, plaintiff's varied allegations are unsupported, and impossible to follow. Even when providing plaintiff a liberal construction of his pleadings, the court finds insufficient basis for jurisdiction. "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d at 1322; *see also Ashcroft v. Iqbal*, 129 S.Ct. at 1949, *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; *see also Haines v. Kerner*, 404 U.S. at 520–21, 92 S.Ct. 594.

Among the statutes repeatedly referred to by plaintiff in his complaint is the Fort Laramie Treaty, 15 Stat. 635. To support his arguments based on the Fort Laramie Treaty, plaintiff relies on his status as an enrolled member of a Native American tribe, as a basis for the government's alleged breach of its contractual obligations and illegal taking to provide the plaintiff with a basis of jurisdiction. Not long ago, plaintiff made similar arguments in a complaint filed on March 10, 2010, also in the Court of Federal Claims, which was assigned to Judge Christine Miller. *See Hernandez v. United States*, 93 Fed.Cl. 193 (2010). The Judge in the earlier case granted the defendant's motion to dismiss for lack of subject matter jurisdiction on June 22, 2010. *See id.* at 200. In the court's opinion, the court addressed the plaintiff's reliance on the Fort Laramie Treaty. The court wrote:

> plaintiff asserts that the "Bad Men" clause creates a third-party contractual right to sue the United States directly. *See Ex parte Kan-gi-shun-ca*, 109 U.S. 556, 567–68 [3 S.Ct. 396, 27 L.Ed. 1030] (1883); *Garreaux v. United States*, 77 Fed.Cl. 726, 735–37 (2007). However, in order to constitute a cause of action under this provision, "bad men" must have "committed a wrong" within the sense of the treaty. *See Kan-gi-shun-ca*, 109 U.S. at 567–68 [3 S.Ct. 396]. The wrong must be committed by a non-Native American against a Native

American, or vice-versa, and a "wrongful act" must be alleged in order for the wrongdoer to be subject to the "Bad Men" clause. *See id.* The term "wrongful act" was not defined explicitly by the Fort Laramie Treaty or in judicial decisions, so the court must seek to determine what the parties to the Fort Laramie Treaty intended this term to mean. *See id.*; *see also Nw. Bands of Shoshone Indians v. United States*, 324 U.S. 335, 337–38 [65 S.Ct. 690, 89 L.Ed. 985] (1945). In making this determination, the court must construe discrepancies in favor of the Native Americans without extending the treaty *beyond its bounds* in order to meet varying alleged injustices.

*Hernandez v. United States*, 93 Fed.Cl. at 199 (emphasis added).

Further, Judge Miller wrote:

> According to plaintiff, Box Butte County District Court Judge Brian Silverman neglected his judicial duties when he refused to recuse himself despite working in a courthouse located on what plaintiff claims is stolen Sioux property. Plaintiff also charges that the Box Butte County Attorneys' Office committed prosecutorial misconduct, witnesses committed misconduct, judges committed judicial misconduct, and his court-appointed trial and appellate counsel ineffectively represented his interests in court.

*Hernandez v. United States*, 93 Fed.Cl. at 196. Judge Miller also noted that, "[p]laintiff makes many claims that might result in criminal punishment, but alleges no acts that would have threatened the peace that the Fort Laramie Treaty was intended to protect. *See [Ex parte] Kan-gi-shun-ca*, 109 U.S. [556], 567 [3 S.Ct. 396, 27 L.Ed. 1030 (1883) ]. If the court were to extend the 'Bad Men' clause to plaintiff's claims, it would improperly extend the clause beyond its intended bounds." *Hernandez v. United States*, 93 Fed.Cl. at 199.

In addition to previously filing in the United States Court of Federal Claims, plaintiff also has raised similar claims in the United States District Court for the District of Nebraska. Plaintiff, however, has con-

ceded in plaintiff's brief filed before Judge Miller, *id.* at 196, and in his complaint before this Judge, that the District Court for the District of Nebraska has no jurisdiction over the plaintiff's claims. As summarized by the United States District Court for the District of Nebraska: "Plaintiff alleges that Defendants engaged in 'criminal acts' and 'misconduct' in order to convict him. Plaintiff specifically alleges that the police bribed witnesses and tampered with evidence, that the prosecuting attorneys conspired against, discriminated against, and maliciously prosecuted Plaintiff, that the judge committed judicial misconduct, that defense counsel was ineffective, and that appellate counsel was ineffective." *Hernandez v. Silverman,* No. 4:08–CV–3099, 2008 WL 4482836, at *1 (D.Neb. Oct. 1, 2008) (internal citations omitted). After review, the District Court for the District of Nebraska dismissed plaintiff's claims without prejudice. *See id.* at *2.

Plaintiff then filed a Petition for Writ of Habeas Corpus in the District Court for the District of Nebraska alleging, among other claims, "Box Butte County District Court Judge Brian Silverman engaged in numerous acts of judicial misconduct," "the prosecution's confidential informant was bribed by a law enforcement officer to give perjured testimony," and "trial court lacked jurisdiction over Petitioner because Petitioner is a member of a federally recognized tribe and the alleged conduct occurred on Sioux land." *See Hernandez v. Houston,* No. 4:09–CV–3070, 2009 WL 1383266, at *1–2 (D.Neb. May 14, 2009). Plaintiff's Petition for Writ of Habeas Corpus was dismissed with prejudice, *Hernandez v. Houston,* No. 4:09–CV–3070, 2009 WL 5214874, at *10 (D.Neb. Dec. 22, 2009), and plaintiff's motions and supplemental motion for reconsideration were also denied. *Hernandez v. Houston,* No. 4:09–CV–3070, 2010 WL 346631, at *1 (D.Neb. Jan. 21, 2010).

 In this court, all of plaintiff's allegations of criminal behavior by various individuals who participated in his trial proceeding and conviction, listed throughout the complaint, including "conspiracy to commit offense or defraud United States," cannot be heard in this court, which lacks jurisdiction to adjudicate claims based on the criminal code. *See Joshua v. United States,* 17 F.3d 378, 379 (Fed.Cir.1994); *Mendes v. United States,* 88 Fed.Cl. 759, 762, *appeal dismissed,* 375 Fed.Appx. 4 (Fed.Cir.2009); *McCullough v. United States,* 76 Fed.Cl. 1, 4 (2006), *appeal dismissed,* 236 Fed.Appx. 615 (Fed. Cir.), *reh'g denied* (Fed.Cir.), *cert. denied,* 552 U.S. 1050, 128 S.Ct. 675, 169 L.Ed.2d 529 (2007). This court does not have jurisdiction to review the decisions of state court Judge Silverman who presided over plaintiff's criminal case or related allegations of ineffective counsel during the prosecution of plaintiff's criminal case. This court does not possess jurisdiction to review decisions of other courts or the proceedings in other federal courts. *See Joshua v. United States,* 17 F.3d at 380; *see also Vereda, Ltda. v. United States,* 271 F.3d 1367, 1375 (Fed.Cir.2001); *Allustiarte v. United States,* 256 F.3d 1349, 1352 (Fed.Cir.), *cert. denied,* 534 U.S. 1042, 122 S.Ct. 619, 151 L.Ed.2d 541 (2001). Moreover, "lower federal courts *lack jurisdiction* to review state court judgments." *Fielder v. Credit Acceptance Corp.,* 188 F.3d 1031, 1034 (8th Cir.1999) (emphasis in original). Only the United States Supreme Court may review final judgments entered by state courts. 28 U.S.C. § 1257 (2006); *see also Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico,* 410 F.3d 17, 21 (1st Cir.2005) ("Congress, by the terms of that statute [28 U.S.C. § 1257], granted the United States Supreme Court, and only the United States Supreme Court, jurisdiction over appeals from state courts ....") (citing the *Rooker–Feldman* doctrine, *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)).

 In addition, plaintiff raises allegations of malicious prosecution, prosecutorial misconduct, and other acts of tortious conduct by a variety of state and federal officials and other individuals, as well as claims for "personal injuries," including "loss of liberty," physical and mental pain, emotional dis-

204

tress, anxiety, humiliation, and loss of employment, and wages. However, the Tucker Act expressly excludes tort claims, including those committed by federal officials, from the jurisdiction of the United States Court of Federal Claims. *See* 28 U.S.C. § 1491(a)(1); *see also Keene Corp. v. United States,* 508 U.S. 200, 214, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Rick's Mushroom Serv., Inc. v. United States,* 521 F.3d at 1343; *Alves v. United States,* 133 F.3d 1454, 1459 (Fed.Cir. 1998); *Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.), *reh'g denied* (Fed.Cir. 1997); *Golden Pacific Bancorp v. United States,* 15 F.3d 1066, 1070 n. 8 (Fed.Cir.), *reh'g denied, en banc suggestion declined* (Fed.Cir.), *cert. denied,* 513 U.S. 961, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994); *Woodson v. United States,* 89 Fed.Cl. 640, 650 (2009); *McCullough v. United States,* 76 Fed.Cl. at 3; *Agee v. United States,* 72 Fed.Cl. 284, 290 (2006); *Zhengxing v. United States,* 71 Fed.Cl. 732, 739, *aff'd,* 204 Fed.Appx. 885 (Fed.Cir.), *reh'g denied* (Fed.Cir. 2006). Therefore, this court does not have jurisdiction to hear Mr. Hernandez's claims sounding in tort.

■ Although plaintiff purports to allege a takings claim under the Fifth Amendment to the United States Constitution, over which this court does have jurisdiction, *Acceptance Ins. Cos., Inc. v. United States,* 503 F.3d 1328, 1336 (Fed.Cir.2007), he fails to state a coherent takings claim on which this court can act. Plaintiff's claim is impossible to decipher. Plaintiff states he is "a beneficiary of an award" from the United States Supreme Court in *United States v. Sioux Nation of Indians,* 448 U.S. 371, 100 S.Ct. 2716, 65 L.Ed.2d 844 (1980) for "unceded Sioux Indian land that the Nebraska, Box Butte Co. courthouse sits on" in Northwest Nebraska. The United States Supreme Court *Sioux Nation* case, however, relates primarily to the award of interest on a previously adjudicated takings claim judgment in the United States Court of Claims and does not provide for jurisdiction regarding plaintiff's confused claim. Nor is any other factual or legal basis for a takings claim articulated by the plaintiff.

■ Plaintiff also requests "an Official Hearing" in the United States Court of Fed-

eral Claims. Trial judges are given broad discretion to control and manage their dockets, including with respect to procedural matters. *See, e.g., Amado v. Microsoft Corp.,* 517 F.3d 1353, 1358 (Fed.Cir.2008) (citing *Nolan v. de Baca,* 603 F.2d 810, 812 (10th Cir.1979), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980)); *Nutrinova Nutrition Specialties and Food Ingredients GmbH v. Int'l Trade Comm'n,* 224 F.3d 1356, 1360 (Fed.Cir.2000). "[T]he parties' right to be heard may be fulfilled by the court's review of the briefs and supporting affidavits and materials submitted to the court." *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.), *cert. denied,* 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 331 (1988); *see also Toquero v. I.N.S.,* 956 F.2d 193, 196 n. 4 (9th Cir.1992) ("It is well-settled that oral argument is not necessary to satisfy due process."); *Lake at Las Vegas Investors Group v. Pac. Malibu Dev. Corp.,* 933 F.2d 724, 729 (9th Cir.), *reh'g denied* (9th Cir. 1991), *cert. denied,* 503 U.S. 920, 112 S.Ct. 1295, 117 L.Ed.2d 518 (1992) (Affirming the trial court and discussing that court's interpretation of a local District Court rule, finding no prejudicial error based on the denial of oral argument in a summary judgment motion because the party "had the opportunity to apprise the district court of any arguments it believed supported its position . . . ."); *see also, generally,* Beth Bates, Annotation, *Necessity of Oral Argument on Motion for Summary Judgment or Judgment on Pleadings in Federal Court,* 105 A.L.R. Fed. 755 (1991).

■ Therefore, a trial court is not required to hold a hearing, but may do so if the court believes the hearing would assist the court to resolve the case. The decision of whether or not to hold an oral argument is made in each case, based on the filings and issues raised in that particular case. Trial courts have broad discretion regarding this decision. After carefully reviewing plaintiff's lengthy complaint, as well as the 47 pages of attached exhibits to the complaint, the court concludes that plaintiff has had sufficient opportunity to present his allegations and supporting information, and that a hearing in

this case is neither required, nor would it be helpful to the court.

 The plaintiff also requests "declaratory, injunctive, and equitable relief or such other, further, and different relief as this Court deems appropriate." However, the Court of Federal Claims lacks the authority to grant declaratory and/or injunctive relief absent a specific and express statute of Congress. As indicated by the United States Court of Appeals for the Federal Circuit, "[a]lthough the Tucker Act has been amended to permit the Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction, see 28 U.S.C. § 1491(a)(2), (b)(2), there is no provision giving the Court of Federal Claims jurisdiction to grant equitable relief when it is unrelated to a claim for monetary relief pending before the court." *Nat'l Air Traffic Controllers Ass'n v. United States,* 160 F.3d 714, 716 (Fed.Cir.1998); *see also United States v. King,* 395 U.S. 1, 5, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) ("In the absence of an express grant of jurisdiction from Congress, we decline to assume that the Court of Claims [now the Court of Federal Claims] has been given the authority to issue declaratory judgments."); *Pryor v. United States,* 85 Fed.Cl. 97, 103 (2008). As plaintiff has not alleged a proper basis for jurisdiction under the Tucker Act, the court cannot grant declaratory or injunctive relief in respect to plaintiff's claims.

Finally, plaintiff filed a motion for appointment of counsel. Plaintiff cites to 25 U.S.C. § 175 (2006), which provides that "[i]n all States and Territories where there are reservations or allotted Indians the United States attorney shall represent them in all suits at law and in equity," as a basis for the court to appoint him counsel. Judges of the Court of Federal Claims, however, have previously indicated, "[c]ourts have found that this 'imposes only a discretionary duty of representation.'" *Hopi Tribe v. United States,* 55 Fed. Cl. 81, 93 n. 14 (2002) (quoting *Pyramid Lake Paiute Tribe of Indians v. Morton,* 499 F.2d 1095, 1097 (D.C.Cir.1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975) and citing *Rincon Band of Mission Indians v. Escondido Mut. Water Co.,* 459 F.2d 1082 (9th Cir.1972)). Regardless, as this court finds that plaintiff has failed to state a claim cognizable in this court, plaintiff's request for appointment of counsel is moot.

**CONCLUSION**

Upon careful review of plaintiff's most recent complaint in this court, consistent with the multiple decisions in the United States District Court for the District of Nebraska and the decision of another Judge of the United States Court of Federal Claims, this court concludes plaintiff's complaint must be dismissed for lack of jurisdiction and failure to state a claim. Therefore, the court **DISMISSES** plaintiff's complaint. The Clerk of the Court shall enter **JUDGMENT** consistent with this Order. In addition, given the two overlapping lawsuits filed by this plaintiff, both in 2010, within a short period of time, in the event this plaintiff files another, related lawsuit in the Court of Federal Claims, the Clerk's Office shall notify the newly assigned Judge of the two previous lawsuits.

**IT IS SO ORDERED.**